**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**SAMUEL BUFORD**                                                                               **PLAINTIFF**

**V.**                     **CASE NO. 3:14CV00295-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**                                                   **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samuel Buford appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**     **Background**

On December 3, 2012, Mr. Buford protectively filed for benefits due to gout, arthritis, hypertension, and high cholesterol. (Tr. 41, 167) His claims were denied initially and upon reconsideration. At Mr. Buford's request, an Administrative Law Judge[1] ("ALJ") held a hearing on May 1, 2014, at which Mr. Buford, represented by counsel, appeared and testified. (Tr. 66-80)

The ALJ issued a decision on June 24, 2014, finding that Mr. Buford was not disabled under the Act. (Tr. 41-49) On December 5, 2014, the Appeals Council denied Mr. Buford's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

---

[1]The Honorable William R. Ingram.

1

Mr. Buford, who was fifty-six years old at the time of the hearing, has an eleventh-grade education and past relevant work as a farm worker. (Tr. 47, 79)

## II.     Decision of the Administrative Law Judge[2]

The ALJ found that Mr. Buford had not engaged in substantial gainful activity since October 15, 2012, and had the following severe impairments: gout, diabetes, hypertension, and obesity. (Tr. 43) The ALJ also found that Mr. Buford did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] (Tr. 43-44)

According to the ALJ, Mr. Buford has the residual functional capacity ("RFC") to do medium work, except that he could only occasionally kneel, crawl, climb ladders, ropes, and scaffolds; and could frequently climb ramps, stairs, balance, stoop, and crouch. (Tr. 44) The ALJ found that Mr. Buford's past relevant work as a farm worker fit within his RFC. (Tr. 47-48) Accordingly, the ALJ determined that Mr. Buford could perform his past relevant work and was not disabled. (Tr. 48)

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

[3] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

**III.  Analysis**

    **A.  Standard of Review**

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    **B.  Mr. Buford's Arguments for Reversal**

Mr. Buford asserts that the Commissioner's decision should be reversed because: (1) his chronic back pain and gout prevent him from performing medium work; (2) the ALJ found that he had no manipulative limitations despite Mr. Buford's carpal tunnel syndrome and arthritis; and (3) the ALJ failed to fully and fairly develop the record. (Doc. entry #11)

        **1.  RFC of Medium Work.**

Mr. Buford claims that his gout and back pain prevent him from performing medium work. *Id.* While Mr. Buford has often complained of the pain and swelling due

to his gout and chronic back pain, his medical records do not establish that his symptoms prevent him from the sitting, standing, or walking required for medium work.

On February 24, 2012, Mr. Buford presented to Crittenden Regional Hospital ("Crittenden") for abdominal pain, but had no joint pain, leg or ankle swelling, and had a normal range of motion ("ROM") in his extremities. (Tr. 290, 291)  He had no issues ambulating.  (Tr. 292)

He returned on August 15, 2012, complaining of knee and wrist pain. (Tr. 278). Despite swelling in his right knee, he ambulated without assistance and drove himself to and from the hospital. *Id.*  He was treated and discharged. *Id.*

On November 7, 2012, Mr. Buford presented to Crittenden complaining of pain, swelling, and tenderness in his foot.  (Tr. 265)  The records indicate that his joints were normal and that they had a normal ROM.  (Tr. 266)  He was ambulatory but walked with an antalgic gait.  (Tr. 266)  Mr. Buford was treated for pain and discharged, ambulating without aid.  (Tr. 268)  Two days later, he went to East Arkansas Family Health Center ("East Arkansas FHC") complaining of pain in his left foot from his gout.  (Tr. 371)  The record indicates only that he had "swelling, redness and tenderness to [his] left great toe." *Id.*  He admitted that he had not taken the pain medication prescribed by the physicians at Crittenden. *Id.*

Three months later, in February 2013, Mr. Buford went to East Arkansas FHC complaining of bilateral foot pain and joint swelling.  (Tr. 369)  Despite his complaints, he was in no acute distress, had normal peripheral pulses, and had no edema. *Id.*  A

4

month later, he returned to East Arkansas FHC, complaining of lower extremity pain, swelling, and, for the first time, complained that he had difficulty "standing or walking for long periods of time." (Tr. 365) Again, he had no edema of his extremities, was in no acute distress, and had normal peripheral pulses. (Tr. 366)

On May 6, 2013, Mr. Buford went to Crittenden complaining of pain in his right foot, but had no swelling, tenderness, numbness, or tingling. (Tr. 255) He was ambulatory, had no problems with mobility, breathed normally, and was in no acute distress. (Tr. 257, 258) Later the same day, he presented to East Arkansas FHC complaining of gout pain in his feet. (Tr. 363) He still had no swelling, but complained that the top of his right foot was tender. *Id.*

In June 2013, Mr. Buford returned to East Arkansas FHC complaining that his joints were stiff, that he had difficulty walking or standing for long periods of time, and that he had some numbness and tingling in his right foot and leg. (Tr. 360) He had no edema, however; had a normal heart rate, normal peripheral pulses, and was in no acute distress. *Id.* He was treated and discharged without limitations or restrictions placed on his activities. (Tr. 361-32)

Mr. Buford went back to East Arkansas FHC in September and December 2013. (Tr. 386, 383) He complained of tingling in his lower extremities (but no foot swelling or pain), some difficulty standing or sitting for long periods of time, but was in no acute distress, had no edema, and had normal peripheral pulses. *Id.* In February 2014, Mr. Buford returned to East Arkansas FHC, complaining of arm, wrist, and back pain. (Tr.

381) He was in no acute distress, had no edema, and, importantly, full ROM of both his lumbar spine and wrists despite his pain. *Id.*

In March 2014, Mr. Buford underwent physical therapy for back, arm, and shoulder pain. (Tr. 389-95) According to Mr. Buford's self-assessment, he was able to lie down, sit, go down stairs, drive a car, and perform housework with some difficulty; he was able to stand, walk, perform yard work, and dress himself with great difficulty. (Tr. 395). He indicated that "standing" improved his back pain. (Tr. 394)

The following month Mr. Buford reported to East Arkansas FHC that he had pain in his wrist, back, and ankle, but no swelling. (Tr. 405-06) During his visit he stated that when he was treated with an injection, he was able to go "about 8 weeks without pain and [that he] would like to get those injections again." (Tr. 405) Mr. Buford further stated that he was able to control the gout swelling by taking his prescribed medication. *Id.* He was in no acute distress, had no edema, and no swelling. (Tr. 405-06) It is well-settled that "impairment[s] which can be controlled by treatment or medication [are] not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

The ALJ properly relied on the substantial evidence set out above to support his disability determination. The ALJ noted that Mr. Buford did not have persistent, ongoing complaints of symptoms associated with his gout or low back pain. (Tr. 44, 46) He noted that on more than one occasion, Mr. Buford's joints were normal; he had no edema in his extremities; and his gout was treatable by medication. (Tr. 44) The ALJ also noted that Mr. Buford did not consistently seek treatment for his back pain, had full lumbar ROM in

February 2013, and denied any gait disturbance in April 2014. (Tr. 45-46) While there is some evidence that Mr. Buford had issues related to his gout and back pain, the mere fact that working might cause him pain or discomfort does not mandate a finding of disability. *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). Accordingly, the ALJ's finding that Mr. Buford retained the RFC of medium work is supported by the record. He was able to sit, stand, and walk months after his alleged disability onset date, and his symptoms were controlled by treatment or medication. See *Estes*, 275 F.3d at 725.

### 2. Carpal Tunnel and Arthritis

Mr. Buford also argues that because of his severe carpal tunnel syndrome and arthritis, the ALJ should have found that he had "manipulative limitations." (Doc. entry #11) As the ALJ noted, Mr. Buford presented no evidence that his bilateral wrist pain was expected to last for a continuous period of more than twelve months. (Tr. 46) Medical records from the relevant time period indicate that Mr. Buford first sought treatment for bilateral wrist pain in June 2013. (Tr. 360) A treating doctor noted that Mr. Buford had "mild" left-median-type, "mild" bilateral-ulnar-entrapment, and "early" sensory neuropathy. (Tr. 419) The ALJ specifically noted that there was no evidence in the record that these "mild" or "early" issues were expected to last for a sufficient period for them to be considered severe. (Tr. 46)

Additionally, there is no evidence that Mr. Buford's carpal tunnel syndrome or arthritis required more than infrequent narcotic pain relievers or conservative treatment. *Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (lack of need for narcotic pain

7

relievers is properly considered in weighing the credibility of a claimant's complaints)*;* *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). An orthopedic surgeon noted that, despite Mr. Buford's subjective pain complaints, he could "give a thumbs up, make an okay sign, spread and cross his fingers, and touch his thumb with the small finger." (Tr. 400) The surgeon observed that light touch sensation was still intact and that the radiographs of Mr. Buford's wrists were unremarkable. *Id.* He discussed a conservative treatment regimen with Mr. Buford, including nonsteroidal anti-inflammatory drugs ("NSAIDs"), splints, or injections. *Id.* He began Mr. Buford's treatment with a trial of "bilateral night splints," with the option to consider either injections or surgery in the future. *Id.* There is no evidence that Mr. Buford required further treatment from the surgeon or narcotic pain relievers on more than two occasions. (Tr. 382, 384)

Despite receiving several additional NSAID treatments for wrist pain, Mr. Buford presented no evidence, other than his own statements, that his symptoms caused more than a minimal limitation on his ability to work. (Tr. 47, 405-06, Tr. 11-13) Notably, Mr. Buford did not consistently seek treatment from his alleged disability onset date; none of his physicians restricted or limited his activities; he was able to manipulate his hands when examined by an orthopedic surgeon; he only underwent conservative treatments for his impairments; and only took narcotic medication for pain relief on two occasions. All of this evidence supports the ALJ's determination that Mr. Buford's carpal tunnel syndrome and arthritis were not severe and did not cause "more than a minimal effect on his ability to work." See *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007).

8

### 3. The ALJ Fully and Fairly Developed the Record.

Mr. Buford claims that because the record contains no functional capacity assessment ("FCA") from Mr. Buford's treating or examining physicians, the ALJ did not fully and fairly develop the record. (Doc. entry #11) Here, however, all of the non-examining, state-agency medical consultants provided thorough explanations supporting their findings that Mr. Buford retained the RFC for medium work. (Tr. 82-90, 91-101) The ALJ gave great weight to these medical opinions in making his RFC determination. (Tr. 47)

The ALJ correctly relied on the professional medical opinions of the state agency consultants, all of whom explained their reasoning for coming to their conclusions. There was no need for additional medical examinations where the medical record before the ALJ provided him with sufficient evidence to determine that Mr. Buford retained the RFC for medium work. See *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (explaining that the ALJ must order additional medical examinations only if the record does not provide sufficient evidence to determine whether a claimant is disabled). The ALJ did not need to go to inordinate lengths to develop Mr. Buford's case; if Mr. Buford required an FCA, his lawyer had every opportunity to request one at his hearing. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (citation omitted).

## IV.     Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Mr. Buford's appeal is DENIED, the oral argument hearing scheduled for September 10, 2015, is cancelled, and the Clerk of Court is directed to close the case.

IT IS SO ORDERED, this 20th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE